Reed, P. J.,
delivered the opinion of the court.
On the 2d day of December, 1894, Wm. H. Fahey was found guilty of stealing one steer, the property of one Gage, and on the 22d day of December was sentenced to pay a fine of two hundred dollars and costs — amounting to something more than two hundred dollars — the whole amounting to four hundred and sixty-four dollars and thirty-five cents.
After the adjournment of court, Fahey attempted to replevy' the fine, and for that purpose executed, with Wickhorst and Klug, the following bond:
“ Know all men by these presents, that we, William H.. *554 Fahey, principal, and Max Wickhorsfc and John P. Klug, sureties, are held and firmly bound unto the people of the state of Colorado in the penal sum of four hundred and sixty-four 85/100 dollars, lawful money of the United States, for the payment of which well and truly to be made we bind ourselves, our heirs, executors and administrators, jointly, severally and firmly. Witness our hands and seals this 22d day of December, A. D. 1891.
“ The condition of the above obligation is such that whereas the said Wm. H. Fahey was, at the November term of the district court sitting in and for Weld county, Colorado, A. D. 1894, convicted of the crime of larceny of live stock, and was sentenced by said court to pay a fine of two hundred dollars and the cost of said prosecution, and stand committed until said fine and costs be paid.
“ Now, if the said Wm. H. Fahey shall well and truly pay said fine and costs within five months from the date of this acknowledgment, then the above obligation to be void, otherwise to remain in full force and effect.
“ William I-I. Fahey. (Seal)
“ Johh P. Klug. (Seal)
“ Max Wickhoust. (Seal)
“ Taken and approved by me at my office this 22d day of December, A. D. 1894.
“ Johh B. Cooke,
“Clerk of District Court, Weld County, Colorado.”
After the approval and acceptance of the bond Fahey was released. The fine and costs not having been paid, after the expiration of five months an execution was issued, levied upon the real estate of Klug, the suretj'', and the land advertised for sale.
On August 5, 1895, plaintiffs in error filed the following motion to quash the execution:
“Motion of Max Wickhorst and John P. Klug to recall, suppress and quash the said execution and to release and vacate the levy of said execution upon the lands and premises *555 of John P. Klug and enter such release of record. Filed Aug. 5th, A. D. 1895.
“ First. For defect appearing on the face of said execution.
“ Second. Because the said execution was improvidently and illegally issued, and issued in violation of law.
“ Third. Because the said execution was not issued upon any bond, undertaking or obligation judicially forfeited pursuant to any order of any court.
“ Fourth. Because the said execution was not issued upon any recognizance entered into before any court, nor was the same issued upon any judgment against the said Max Wickhorst or John P. Klug, or either of them.
“Fifth. Because no recognizance of record was ever entered into before court, by either the said John P. Klug or Max Wiokhorst.
“ Sixth. Because any sale made under said execution of the lands or the property of said John P. Klug will operate as a cloud upon the title to such lands or property of said John P. Klug.
“ Seventh. Because the said John P. Klug and Max Wickhorst are entitled to their day in court before being involuntarily divested of any of their property.
“Eighth. For other good and sufficient reasons.”
And with such motion was filed the affidavit of Klug, supposed to be in support of it. The affidavit is regarded as of no importance at the time and of no importance in determining the question presented. The motion to recall and quash the execution was denied, and from such judgment error was prosecuted to this court.
The case has been abty and carefully argued by counsel of both parties, it seems unnecessarily so, considering that there is but one apparently veiy simple question involved.
In the elaborate and carefully prepared argument of the learned attorney general, the bond in question and a recognizance entered of record in court are contended to be legally identical and subject to the same method of procedure, or at least that the difference in the two is so slight that in the *556 printed argument it is discussed as follows: “ The foregoing makes it manifest that plaintiffs in error seek to escape liability under an obligation which they voluntarily assumed, and the full benefits of which their principal has enjoyed upon a bare technicality. They contend that the recognizance should have been read aloud to the recognizors in open court with their hands uplifted and that they should have verbally assented thereto. Because this perhaps was not done, but, instead of that, the necessary obligation was reduced to writing and signed and sealed by them and filed with the clerk on a juridical day, though perhaps a few minutes after the adjournment of the court, it is seriously urged that they can escape all liability. To our minds, this is reducing a technicality to the thinness of a spider’s web.” I cannot agree with the learned attorney general that the difference between the two is merely technical. I regard it as radical and fundamental. It is admitted in argument that the attempted proceeding to replevy the fine and costs was by the bond, that it was done with the clerk after the adjournment; and, after admitting the slight irregularity, contends that the legal identity of the bond with the statutory recognizance was such that upon the default of the obligors in the bond an execution could legally issue upon it without a judgment.
The legal difference between a simple bond for the future payment of money, executed by sureties and under seal, deposited with the clerk of, the court and placed on file, and a statutory recognizance in criminal proceedings, is so marked and Avell defined that we should hesitate to discuss it Avere it not for the argument of the learned counsel for defendant in error.
The replev3'ing of a judgment for a fine and costs is purely statutory, and onty in criminal proceedings is a provision engrafted upon the criminal law by statute, and, as in any other criminal proceedings, as well as in all remedies purely statutory, the strict adherence to the provisions of the statute is necessary to the validity of the proceeding. Any departure is deemed serious. It will not do to say that something *557 “like” can be substituted and that the requirements of the statute will be complied with. The law in regard to the replevy of fines and costs is the following:
“ It shall and may be lawful for any person or persons convicted of any criminal offense to replevy the judgment for the fine and costs, or the costs only, when no fine shall be imposed, by such convicted person or persons, with one or more good and sufficient freeholders entering into a recognizance before the district court, to the people of this state, for the payment of such fine and costs, or costs only, within five mouths of the date of the acknowledgment, which recognizance so taken is hereby declared valid in law, and to create a lien on the real estate of all such persons as shall acknowledge the same, and upon the breach thereof the clerk is hereby authorized to issue an execution against the goods and chattels, lands and tenements of the persons who entered recognizance, in the same manner as if it had been a judgment of the court, which execution shall be collected in the same manner as is prescribed in the foregoing section. No scire facias shall be necessary previous to issuing such execution.” Mills’ Ann. Stats., sec. 1473.
The recognizance must be entered into in the district court, in open court. The clerk in his office after adjournment or at any time is not a district court, nor is any power conferred upon him to discharge a person from custody or allow a replevy.
A recognizance in open court is a solemn confession of judgment, individually and collectively, to be enforced at the end of five months if the money remains unpaid. It is entered of record and the judgment so entered is declared valid in law, and to create a lien upon the real estate of all such persons as shall acknowledge the same (confess the judgment), and upon default the clerk is authorized to issue an execution as upon any other judgment of record. Ho scire facias is required, simply for the reason that it is already a judgment that may be enforced, and no proceeding is necessary to reduce it to a judgment. Compare the provisions of the bond *558 in controversy with the requirements of a recognizance, and something more than a technical difference is discovered.
The wording of a recognizance entered into in open court is: “ Do acknowledge yourselves to owe and be indebted unto the people of the state of Colorado in the penal sum of * * *, lawful money of the United States, to be levied of your and each of your goods and chattels, lauds and tenements, to the use of said people, if default be made in the following conditions,” etc. It was already a judgment that could be enforced under the provisions of the statute providing for it. The other, the bond in controversy, was the ordinary bond for the payment of money, upon which, in case of default, it was necessary to issue process bringing the parties in, if necessary, an adjudication and an entry of judgment, before an execution could issue, and an attempt to substitute and use it as a statutory recognizance in a criminal case did not change its character. I can find no authority nor any decided case where an execution was allowed to be enforced against the estate of bondsmen on this sort of a contract without their being allowed to defend, or an entry of judgment.
“A recognizance is an obligation of record entered into before a court or officer duly authorized for that purpose, with a condition to do some act required by law which is therein specified.” 1 Bouv. Inst., 264; Jacobs Law Dic.; 2 Black. Com., 341 and 465; State v. Walker, 56 N. H. 178. “ A recognizance differs from a bond in this: that while the latter, which is attested by the signature and seal of the obligor, creates a fresh or new obligation, the former is an acknowledgment of record of an already existing debt." State v. Crippen, 1 Ohio St. 401; State v. Daily, 14 Ohio St. 91; People v. Kane, 4 Denio (N. Y.), 535. “But the principal difference between the two forms of obligation lies in the fact that a recognizance is a matter of record in the nature of a conditional judgment and is proceeded upon by scire facias or summons.” Republica v. Corbet, 3 Dall. 475.
Our statute is exceptional, and differs from the statutes of nearly all the states. Although the recognizance is, as in all *559 cases, a conditional judgment until default, in nearly all the states it is necessary to enter the default and a judgment, upon which a scire facias issues to the obligors to appear and show cause why the judgment should not be final. By our statute, upon default the judgment becomes final, and no proceeding by scire facias is required. Whether default and final judgment should be entered of record before the issuing of an execution we shall not determine.
In all the states the'recognizance entered of record is so far a judgment that scire facias is the proper writ, while upon the bond in controversy, for the payment of money at a future time, no one would presume to proceed by scire facias, but would be compelled to proceed by complaint and summons as upon any other contract or obligation. It is needless to sajr that until there was an adjudication and a judgment no execution could issue. The difference in the remedy to enforce the two kinds-of obligations is so marked that no attempt should be made to substitute one for the other.
We are not called upon to decide whether the bond was absolutely void, or one that could be enforced by proper proceedings ; consequently shall make no decision upon that point. If the parties see fit to proceed upon the bond, the question can be adjudicated. The issuing of the execution by the clerk was unwarranted and execution void. Tire illegality of the entire proceeding in the attempt to replevy the fine and costs appeared upon the record and files and the clerk’s entries, and when the attention of the court was called to it the execution should have been quashed. The affidavit of Klug in support of the motion to quash was unnecessary. Whether it was or was not regular and proper practice it is not necessary to determine. It is at least a novel practice for a litigant to file an affidavit to show.what appeared of record in the case. At any rate, it might be regarded as harmless. The execution should have been recalled and quashed. In refusing the motion the court erred. The judgment of the district court will be reversed and cause remanded with instructions to quash the execution.

Reversed.